[No. 22930.   Department One.   April 2, 1931.]

THE STATE OF WASHINGTON, *on the Relation of Puget Sound Navigation Company, Respondent,* v. THE DEPARTMENT OF PUBLIC WORKS *et al., Appellants.*[1]

[1]Reported in 297 Pac. 795.

*Byers & Byers, Philip D. Macbride,* and *George W. Williams,* for appellant.

*The Attorney General* and *John C. Hurspool, Assistant,* for respondent Department of Public Works.

*Bogle, Bogle & Gates, Lawrence Bogle,* and *Edward G. Dobrin,* for respondent Puget Sound Navigation Co.

PARKER, J.—This is an appeal from a judgment of the superior court for Thurston county reversing a decision and order of the department of public works authorizing appellant Washington Route, a corporation, to improve its public steamboat service over a route operated by it under a certificate of public convenience and necessity. Respondent Puget Sound Navigation Company operates, under a certificate of public convenience and necessity, a public steamboat service over a large portion of the same route. This is a controversy between these two transportation companies, which, as will presently more fully appear, are competing companies in so far as they operate over the same route.

Since the enactment of chapter 248 of the Laws of 1927, p. 382; Rem. 1927 Sup., § 10361-1, providing for the issuance of certificates of public convenience and necessity authorizing steamboat public service between fixed termini over regular routes, and for many years prior thereto, the Washington Route and the Navigation Company have each separately operated a steamboat freight, passenger and ferry public service between Seattle and Bremerton, and beyond Bremerton. Between Seattle and Bremerton, which is some sixteen miles west of Seattle, the routes were and have remained substantially the same, varying not to exceed

a few hundred yards apart at any point along their respective courses. Beyond Bremerton, the route of the Washington Route was and is northerly into Port Washington, a distance of some six miles to Chico. Beyond Bremerton, the route of the Navigation Company was and is southerly a distance of one or two miles to Port Orchard.

After the enactment of chapter 248 of the Laws of 1927, p. 382, it having been made to appear to the satisfaction of the department that each of these transportation companies was, and for many years had been, operating in good faith over its entire route, as above noticed, the department granted to the Washington Route, as a good faith operator over its entire route, a certificate of public convenience and necessity, authorizing it to continue to operate its freight, passenger and ferry service between Seattle and Chico, by way of South Beach, Fort Ward, Pleasant Beach, Waterman, Manette, Bremerton, Sheridan, Tracyton, Fairview, and Silverdale; and also granted to the Navigation Company, as a good faith operator over its entire route, a certificate of public convenience and necessity authorizing it to continue to operate its freight, passenger and ferry service between Seattle, Bremerton and Port Orchard.

The only difference between these two certificates of public convenience and necessity, as to the portion of the respective routes between Seattle and Bremerton, is that the Washington Route's certificate contemplated service to and from South Beach, Fort Ward, Pleasant Beach, Waterman, and Manette, while the Navigation Company's certificate contemplated through service between Seattle and Bremerton without making any local calls along that portion of its route. Nevertheless, the respective routes between Seattle and Bremerton were and are the same, except

the very slight deviation therefrom by the Washington Route in making calls at the named places along that portion of the route.

In April, 1930, the Washington Route petitioned the department of public works to authorize it to improve its service by furnishing additional trips between Seattle and Bremerton, and, incidentally, to abandon most of its other calls, particularly those between Seattle and Bremerton, because of the centralizing of the traffic at Bremerton, which has become a city of considerable importance and the main center of population of the district served by both transportation companies, and because the traffic at most of its other calls has become of negligible quantity without any public necessity for continuing the service at those places. The Navigation Company filed its protest against the granting of the relief asked for by the Washington Route, claiming that, under the certificates of public convenience and necessity, it is entitled to the exclusive right to maintain a direct through service without intermediate calls between Seattle and Bremerton.

A hearing was accordingly held by the department, at which both transportation companies appeared and introduced evidence in support of their respective claims, following which, the department rendered its decision, reviewing the controversy at length, and embodying therein its findings and order, which, in so far as it seems to us necessary to here notice, read as follows:

"With reference to the way-points named in the certificate of the Washington Route between Seattle and Bremerton, the uncontradicted testimony shows that regular service to these points is no longer justified. The number of passengers offering themselves at South Beach is negligible. Fort Ward is occupied only by caretakers and the dock has been allowed to fall

into disrepair. No landing has been made at this point for the past six months. There has been no traffic at Pleasant Beach for more than a year in which time the dock has fallen down. For cause already described, the traffic at Waterman has dropped to one or two passengers a week. Manette is now a part of the City of Bremerton; until the opening of the new bridge, the Washington Route received considerable traffic at this point but this traffic is now more conveniently handled at the Municipal Dock at Bremerton and the Manette Dock has been closed by its owners. Under these circumstances, no useful purpose will be served by requiring the Washington Route to stop at these points. The abandonment of this way-port service will enable the company to give a faster and better service to the other points on its route and will work no injury to the public. The principal business of the Washington Route has always been derived from Bremerton and points on Port Washington. . . .

"Petitioner asks for permission to furnish a direct service between Seattle and Bremerton, in addition to the scheduled service between Seattle, Bremerton, Silverdale and Chico. This is equivalent to asking for a new certificate. . . .

"The department is, however, of the opinion that the Washington Route has the right to build up its revenues by furnishing more frequent service over its route with additional and better equipment. Neither the Certificate Law nor the certificate issued by the department attempts to specify the vessels or schedules to be operated. . . . Changing conditions require, and it is a manifest purpose of the law to authorize the department to maintain, a continuing supervision over the services and schedules of competing companies. It was not the purpose of the law to end existing competition but rather to prevent useless and unrestrained competition. . . .

"In this case it is apparent that two certificates were issued authorizing service between competing companies between the same districts. No limitations were placed in either of the certificates granted to these companies, and so long as adequate service is given to all localities, no reason exists for refusing to permit

improved service to points whose traffic justifies greater service. The evidence shows that the necessity for service has ceased at many points. There is need of additional service at Bremerton and as both companies serve Bremerton, both companies possess the right to improve that service.

"That improved service by the Washington Route will convenience the public has been amply shown. Bremerton is a city of 12,000 population, 16 miles from Seattle. The Navigation Company now furnishes a service of nine round trips daily. The schedules are so arranged that passengers missing a boat in either Seattle or Bremerton must wait at least two hours before they can obtain passage. . . .

"The Washington Route will be allowed to file a modified time schedule providing additional daily trips from Chico (or Silverdale) to Seattle and return, the departures from Bremerton and Seattle to be at least 30 minutes removed from the present scheduled departures of the Navigation Company.

"The times of arrival and departure at points above Bremerton shall be determined by petitioner to conform with the foregoing as nearly as may be practicable. The evidence is to the effect that the new bridge across Port Washington Narrows will make navigation difficult and uncertain at certain stages of the tide and during foggy weather, and a vessel suitable for petitioner's service between Bremerton and Seattle may prove too large for regular service on a fixed schedule through the Narrows. Therefore, the petitioner will be permitted to provide the service above Bremerton, either with the same vessel used between Seattle and Bremerton or with a smaller vessel adequate for the service, connecting at Bremerton. . . .

"WHEREFORE IT IS ORDERED That the petition of the Washington Route herein to furnish direct service between Seattle and Bremerton be denied.

"It is further ordered that the Washington Route be allowed, upon filing proper time schedules, to operate additional round trips daily between Seattle, Bremerton, Silverdale and Chico, such trips to be op-

erated at the time and in the manner stated in the findings of fact.

"It is further ordered that the Washington Route be allowed to abandon regular scheduled service to South Beach, Pleasant Beach, Waterman, Manette and Fort Ward."

The evidence seems to us to well support the above summarized facts.

Our public service law was originally enacted as chapter 117, Laws of 1911, p. 538 (Rem. Comp. Stat., §§ 10339 *et seq.*) It did not then provide for issuance of certificates of public convenience and necessity or the regulation of public service corporations by any such means. Section 80 (§ 10422, Rem. Comp. Stat.), as amended by chapter 145, Laws of 1913, p. 452, reads in part as follows:

"When two or more public service corporations, (meaning to exclude municipal and other public corporations) are engaged in competition in any locality or localities in the state, either may make complaint against the other or others that the rates, charges, rules, regulations or practices of such other or others with or in respect to which the complainant is in competition, are unreasonable, unremunerative, discriminatory, illegal, unfair or intending or tending to oppress the complainant, to stifle competition, or to create or encourage the creation of monopoly, and upon such complaint or upon complaint of the commission upon its own motion, the commission shall have power, after notice and hearing as in other cases, to, by its order, subject to appeal as in other cases, correct the abuse complained of by establishing such uniform rates, charges, rules, regulations or practices in lieu of those complained of, to be observed by all of such competing public service corporations in the locality or localities specified as shall be found reasonable, remunerative, non-discriminatory, legal, and fair or tending to prevent oppression or monopoly or to encourage competition. . . ."

Section 90 (§ 10432, Rem. Comp. Stat.) reads as follows:

"The commission [department] may at any time, upon notice to the public service company affected, and after opportunity to be heard as provided in the case of complaints rescind, alter or amend any order or rule made, issued or promulgated by it, and any order or rule rescinding, altering or amending any prior order or rule shall, when served upon the public service company affected, have the same effect as herein provided for original orders and rules."

Thereafter, by chapter 59, Laws of 1921, p. 175 (§ 10412, Rem. Comp. Stat.), the act was amended by providing in general terms for the issuance of certificates of public convenience and necessity to public service corporations, authorizing them to undertake stated public service, and giving to them certain preference rights therein. This, however, seems not to have been regarded by the department as applicable to steamboat service. Thereafter, certificates of public convenience and necessity were provided for by chapter 248, Laws of 1927, p. 382, amendatory of the original act of 1911; which amendatory act reads in part as follows:

"No steamboat company shall hereafter operate any vessel or ferry for the public use for hire between fixed termini or over a regular route upon the waters within this state, including the rivers and lakes and Puget Sound, without first applying for and obtaining from the department of public works a certificate declaring that public convenience and necessity require such operation: . . . Provided, . . . but the department shall not have power to grant a certificate to operate between districts and/or into any territory already served by an existing certificate-holder, unless such existing certificate-holder shall fail and refuse to furnish reasonable and adequate service: Provided, A certificate shall be granted when it shall appear to the satisfaction of the department that such steamboat

company was actually operating in good faith over the route for which such certificate shall be sought, on January 15, 1927 : Provided, further, That in case two or more steamboat companies shall upon said date have been operating vessels upon the same route or between the same districts the department of public works shall determine after public hearing whether one or more certificates shall issue, and in determining to whom a certificate or certificates shall be issued, the department shall consider all material facts and circumstances including the prior operation, schedules and services rendered by either of said companies, and in case more than one certificate shall issue, the department shall fix and determine the schedules and services of the companies to whom such certificates are issued to the end that duplication of service be eliminated and public convenience be furthered." Rem. 1927 Sup., § 10361-1.

We thus summarize these statutory provisions to show their applicability to our present inquiry, as having become parts of our original public service law of 1911, and hence to be so read and considered.

It is contended in behalf of the Navigation Company, in substance, that it has the exclusive right of direct through service, without intermediate calls, between Seattle and Bremerton; and that to permit the Washington Route to abandon its calls at South Beach, Fort Ward, Pleasant Beach, Waterman and Manette would, in effect, permit it to invade the certificate rights of the Navigation Company; in other words, that to permit the Washington Route to furnish direct through service, without intermediate calls, between Seattle and Bremerton would be, in effect, to grant to it a certificate to operate between districts into territory already served by the Navigation Company; this in violation of one of the above quoted provisions of the amendatory act of 1927.

We do not think that it can be so held under the

facts here appearing. Plainly, the Washington Route's certificate gave to it as complete a right to carry through traffic between Seattle and Bremerton as did the Navigation Company's certificate give to it such right.

When steamboat public service transportation came under regulation by the certificate of public convenience and necessity system, under chapter 248, Laws of 1927, both of these transportation companies were entitled, as existing good faith operators, to certificates of public convenience and necessity authorizing each to continue its operation. They were then, and for many years prior thereto had been, "operating vessels upon the same route and between the same districts," in so far as Seattle and Bremerton were concerned. Then, prior thereto, and since then, they were, and now are, we think, competing operators for the through traffic between Seattle and Bremerton within the meaning of the public service law, and subject to continuing control by the department with respect to their competition with each other.

We do not lose sight of the fact that the competition regulation authorized by the law seems to contemplate the initiation of controversies thereunder by complaint, apparently of some existing condition. While the protest of the Navigation Company in this case is not, in terms, a complaint against the Washington Route as to what it is doing, or as to any existing condition, that protest nevertheless is, in effect, a complaint against what the Washington Route is asking the department to permit it to do, and which the Navigation Company asserts will invade its certificate rights.

We think, in view of the 1927 amendment, the department has jurisdiction to determine this controversy, the same as if the protest of the Navigation

Company were, in terms, a complaint of existing doings of the Washington Route. This is but a matter of adjustment of the competition differences between these transportation companies in view of changed conditions from those existing at the time of the original granting of the good faith certificates to them. Observations made in our recent decision in *North Bend Stage Line v. Denney,* 153 Wash. 439, 279 Pac. 752, we think, lend support to this view, though we do not cite that decision as being directly in point in our present inquiry.

Counsel for the Navigation Company call our attention to certain portions of the decision and order of the department which they claim are inconsistent and lend support to their argument that the department's decision and order is erroneous. The questioned language is as follows:

"Petitioner [Washington Route] asked for permission to furnish a direct service between Seattle and Bremerton in addition to the scheduled service between Seattle, Bremerton, Silverdale and Chico. This is equivalent to asking for a new service. . . . Wherefore, it is ordered that the petition of the Washington Route herein to furnish direct service between Seattle and Bremerton be denied."

The department seems to be of the opinion that to grant the Washington Route permission to furnish a scheduled service exclusively between Seattle and Bremerton and abandon all of its other service, that north of Bremerton as well as that between Seattle and Bremerton, would be equivalent to granting it a new certificate. Whether the department is correct in this view, we need not now determine. It does seem that the portion of the decision and order above quoted, read apart from other portions of the decision and order, is inconsistent with what was finally granted to

the Washington Route. But we think it is apparent that the portion of the order which denies the Washington Route's petition, in so far as it asks permission to "furnish direct service between Seattle and Bremerton," means only that the Washington Route shall not be permitted to so limit its service, but must continue to furnish that service, together with its service beyond Bremerton to Chico; that is, when read as a whole, the decision and order seems to us to mean that the Washington Route must make all of its trips over the whole course of its route between Seattle and Chico.

This, of course, furnishes service to Bremerton, but not exclusively to Bremerton. It seems to us to be of no consequence that the Washington Route may, as occasion necessitates, complete each trip between Seattle and Chico with a smaller boat.

The problem, as presented by the voluminous record and briefs, seems much involved. We think, however, that the foregoing considerations are decisive in favor of the Washington Route and call for the upholding of the decision and order of the department.

The judgment of the trial court is reversed, and the decision and order of the department is affirmed.

TOLMAN, C. J., HOLCOMB, and MAIN, JJ., concur.